**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

KAYVON HAGHIGHI, DDS, MD, and
MAXILLOFACIAL SURGERY CENTER
FOR EXCELLENCE,

             Plaintiffs,

vs.

HORIZON BLUE CROSS BLUE SHIELD
OF NEW JERSEY,

             Defendant.

**DOCKET NO. 19-cv-20483 (FLW) (ZNQ)**

*Civil Action*

---

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS**

---

STARK & STARK, P.C.
993 Lenox Drive, Bldg. 2
Lawrenceville, New Jersey 08648-2389
(609) 896-9060
(609) 895-7395 (FAX)
*Attorneys for Plaintiffs*

**OF COUNSEL AND ON THE BRIEF:**

THOMAS J. PRYOR, ESQUIRE

**ON THE BRIEF:**

CORY A. RAND, ESQUIRE

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

# **TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS AND RELEVANT PROCEDURAL BACKGROUND ................... 2

STANDARD OF REVIEW ................................................................................................. 5

LEGAL ARGUMENT ....................................................................................................... 7

      I.     The State Law Causes of Action Asserted in Plaintiff's Amended Complaint Are Not Preempted by ERISA ................................................................................ 7

      II.    Plaintiff's State Law Claims Are Sufficiently Pleaded to Survive Dismissal ...... 19

            A.    Plaintiff Sufficiently Pleads a Plausible Claim for Breach of Contract. ................................................................................................ 19

            B.    Plaintiff Sufficiently Pleads Plausible Claims for Quantum Meruit and Unjust Enrichment................................................................................... 19

            C.    Plaintiff Sufficiently Pleads a Plausible Claim for Tortious Interference with Economic Advantage ................................................... 22

            D.    Plaintiff Sufficiently Pleads a Plausible Claim for Negligent Misrepresentation ................................................................................... 23

            E.    Plaintiff Sufficiently Pleads a Plausible Claim for Promissory and Equitable Estoppel............................................................................. 26

      III.    Plaintiff Should Be Granted Leave to Amend if Plaintiff's State Law Claims Are Found to Be Preempted or Inadequately Pleaded........................................... 29

CONCLUSION.................................................................................................................. 30

i

## **TABLE OF AUTHORITIES**

**CASE LAW**                                                                                PAGE

Advanced Orthopedics and Sports Med. Inst. v. Empire Blue Cross Blue Shield,
    No. 17-8697, 2018 U.S. Dist. LEXIS 96814 (D.N.J. June 7, 2018) ........................ 16

Aesthetic & Reconstructive Breast Ctr., LLC v. United Healthcare Grp., Inc.,
    367 F. Supp. 3d 1 (D. Conn. 2019) ......................................................................... 15

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ........................................................................... 6

Ass'n of N.J. Chiropractors v. AETNA, Inc., No. 09-3761,
    2012 U.S. Dist. LEXIS 64413 (D.N.J. May 8, 2012) ............................................. 21

Atl. Shore Surgical Associates v. Horizon Blue Cross Blue Shield, No. 17-07534,
    2018 U.S. Dist. LEXIS 90734 (D.N.J. May 31, 2018) ........................................... 16

Atl. Shore Surg. Assocs. v. Horizon Blue Cross Blue Shield of N.J.,
    OCN-L-2792-17 (Law Div. Oct. 3, 2018) .............................................................. 14

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ................................................. 5, 6, 7

Cajoeco, LLC v. Ben. Plans Admin. Servs., Docket No. A-4364-16T4,
    2019 N.J. Super. Unpub. LEXIS 964 (App. Div. Apr. 25, 2019) ........................... 18

Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,
    519 U.S. 316 (1997) ................................................................................................. 9

Caldwell Trucking PRP Group v. Spaulding Composites Co.,
    890 F. Supp. 1247 (D.N.J. 1995) ............................................................................. 6

Carducci v. Aetna U.S. Healthcare, 247 F. Supp. 2d 596 (D.N.J. 2003) ...................... 29

Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334 (1979) ............... 28

Comprehensive Spine Care P.A. v. Oxford Health Ins., Inc., Civ. No. 18-10036(JLL),
    2018 U.S. Dist. LEXIS 207782 (D.N.J. Dec. 10, 2018) ......................................... 13

Cotter v. Newark Hous. Auth., 422 Fed. App'x 95 (3d Cir. 2011) ................................ 26

Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272 (6th Cir. 1991) ................ 15

District of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125 (1992) .................. 10

Duffy v. Charles Schwab & Co., 123 F. Supp. 2d 802 (D.N.J. 2000) .................... 20, 27

E. Coast Advanced Plastic Surgery v. Aetna, Inc., No. 17-13676,
    2018 U.S. Dist. LEXIS 103650 (D.N.J. June 21, 2018) .......................................................... 27

E. Coast Advanced Plastic Surgery v. Horizon Blue Cross Blue Shield of N.J.,
    No. 18-cv-7718 (KM) (MAH), 2018 U.S. Dist. LEXIS 199891 (D.N.J. Nov. 26, 2018) ...... 14

Egelhoff v. Egelhoff, 532 U.S. 141 (2001) ................................................................................. 8, 9

Foman v. Davis, 371 U.S. 182 (1962) ............................................................................................ 29

Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund,
    538 F.3d 594 (7th Cir. 2008) ................................................................................................. 15

Glastein v. Aetna, Inc., Civ. No. 18-9262, 2018 U.S. Dist. LEXIS 162857
    (D.N.J. Sept. 24, 2018) ................................................................................................. passim

Gobeille v. Liberty Mut. Ins. Co., 136 S. Ct. 936 (2016) ................................................................ 9

Goldstein v. Elk Lighting, Inc., Civil Action No. 3:12-CV-168,
    2013 U.S. Dist. LEXIS 30569 (M.D. Pa. Mar. 4, 2013) ....................................................... 21

Grayson v. Mayview State Hosp., 293 F.3d 103 (3d Cir. 2002) ................................................. 7, 29

Grimes v. Prudential Fin., Inc., Civil Action No. 09-419 (FLW),
    2010 U.S. Dist. LEXIS 64530 (D.N.J. June 29, 2010) .......................................................... 18

Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463 (D.N.J. 1990) ..................... 29

Hartman v. Wilkes-Barre Gen. Hosp., 237 F. Supp. 2d 552 (M.D. Pa. 2002) ....................... 17, 18

Health Maintenance Org. v. Whitman, 72 F.3d 1123 (3d Cir. 1995) ............................................. 8

Hedges v. United States, 404 F.3d 744 (3d Cir. 2005) ................................................................... 6

Hocheiser v. Liberty Mut. Ins. Co., Civil Action No. 17-6096 (FLW)(DEA),
    2018 U.S. Dist. LEXIS 47870 (D.N.J. Mar. 23, 2018) ......................................................... 18

Hospice of Metro Denver v. Group Health Ins. of Okla., Inc., 944 F.2d 752 (10th Cir. 1991) .... 15

Ingersoll-Rand Co. v. McClendon, 498 U.S. 133 (1990) ............................................................... 9

In Home Health v. Prudential Ins. Co. of Am., 101 F.3d 600 (8th Cir. 1997) ............................. 15

In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517 (D.N.J. 2004) ........................................... 20, 28

Joyce v. RJR Nabisco Holdings Corp., 126 F.3d 166 (3d Cir. 1997) ............................................. 8

Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406 (3d Cir. 1991) ............................................ 6

4839-5226-2326, v. 1

Kollman v. Hewitt Assocs., LLC, 487 F.3d 139 (3d Cir. 2007) .................................................... 18

Konover Constr. Corp. v. East Coast Const. Servs. Corp., 420 F. Supp. 2d 366 (D.N.J. 2006)... 23

Lordmann Enters., Inc. v. Equicor, Inc., 32 F.3d 1529 (11th Cir. 1994) ...................................... 15

Maniscalco v. Brother Int'l Corp. (USA), 627 F. Supp. 2d 494 (D.N.J. 2009) ....................... 20, 28

Marks v. Struble, 347 F. Supp. 2d 136 (D.N.J. 2004) ................................................................ 7, 29

Maryland v. Louisiana, 451 U.S. 725 (1981) ................................................................................. 8

McGovern v. City of Philadelphia, 554 F.3d 114 (3d Cir. 2009) .................................................. 5

Mem'l Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236 (5th Cir. 1990) ............................ 14

Mendez v. Avis Budget Group, Inc., No. 11-6537, 2012 U.S. Dist. LEXIS 50775
     (D.N.J. Apr. 20, 2012) .......................................................................................................... 21

Miller v. Aetna Healthcare, Civ. A. No. 01-2443, 2001 U.S. Dist. LEXIS 20801
     (E.D. Pa. Dec. 12, 2001) ...................................................................................................... 29

MK Strategies, LLC v. Ann Taylor Stores Corp., 567 F. Supp. 2d 729 (D.N.J. 2008) .......... 21, 28

Nat'l Sec. Sys. v. Iola, 700 F.3d 65 (3d Cir. 2012) ...................................................................... 18

New York-Connecticut Dev. Corp. v. Blinds-To-Go (U.S.) Inc., 449 N.J. Super. 542
     (App. Div. 2017) .............................................................................................................. 27, 28

N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,
     514 U.S. 645 (1995) ..................................................................................................... 8, 9, 10

Phillips v. Cnty. of Alleghany, 515 F.3d 224 (3d Cir. 2008) .................................................. 6, 25

Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987) .................................................................. 8, 17

PNY Techs., Inc. v. Lorenzo Salhi & Silicon Valley Solutions, Inc., No. 12-04916,
     2013 U.S. Dist. LEXIS 110877 (D.N.J. Aug. 5, 2013) ......................................................... 20

Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc., 307 N.J. Super. 461 (App. Div. 1998) .................. 26

Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739 (1989) ........................................ 22

Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266 (3d Cir. 2001) .................................... 7, 17, 18

Semerenko v. Cendant Corp., 223 F.3d 165 (3d Cir. 2001) ........................................................... 6

Shalita v. Twp. of Washington, 270 N.J. Super. 84 (App. Div. 1994) ................................... 21, 27

iv

Shaw v. Delta Air Lines, 463 U.S. 85 (1983) ............................................................... 10

Small v. Oxford Health Ins., Inc., Civil Action No. 18-13120 (JLL),
    2019 U.S. Dist. LEXIS 27878 (D.N.J. Feb. 21, 2019) ...................................... *passim*

Suburban Transfer Serv. v. Beech Holdings, Inc., 716 F.2d 220 (3d Cir. 1983) ............. 20, 21, 27

The Meadows v. Employers Health Ins., 47 F.3d 1006 (9th Cir. 1995) ....................................... 15

Toll Bros., Inc. v. Bd. of Chosen Freeholders of Cnty. of Burlington, 194 N.J. 223 (2008) ........ 26

Univ. Orthopaedic Assocs. v. Horizon Blue Cross Blue Shield of N.J.,
    Docket No. MID-L-4493-18 (Law Div. Jan 11, 2019) ........................................... 14

Winer Family Trust v. Queen, 503 F.3d 319 (3d Cir. 2007) .......................................... 6

1975 Salaried Ret. Plan for Eligible Employees of Crucible, Inc. v. Nobers,
    968 F.2d 401 (3d Cir. 1992) ................................................................... 9

## **STATUTES**

29 U.S.C. § 1001 ................................................................................ 1, 12

29 U.S.C. § 1132(a) ............................................................................ 4, 7, 8

29 U.S.C. § 1144(a) ............................................................................ 4, 7

## **RULES**

Fed. R. Civ. P. 8(a)(2) ........................................................................ 6

Fed. R. Civ. P. 8(d)(2), (3) ................................................................. 20

Fed. R. Civ. P. 12(b)(6) ..................................................................... *passim*

Fed. R. Civ. P. 15(a) ......................................................................... 29

**PRELIMINARY STATEMENT**

Plaintiffs Kayvon Haghighi, DDS, MD ("**Dr. Haghighi**" or "**Plaintiff**") and Maxillofacial Surgery Center for Excellence ("**Maxillofacial**" or the "**Surgery Center**") (collectively, "**Plaintiffs**") respectfully submit this memorandum in opposition to the Motion to Dismiss filed by Defendant Horizon Blue Cross Blue Shield of New Jersey ("**Horizon**" or "**Defendant**") on January 28, 2020 (Dkt. No. 14).

Defendant moves to dismiss Plaintiff's state law claims for breach of contract, quantum meruit and unjust enrichment, tortious interference, negligent misrepresentation, and promissory estoppel on the grounds that these state law claims are expressly preempted by Section 514(a) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"), because the claims "relate to" an ERISA benefit plan administered by Defendant. Plaintiff's state law claims, however, are based entirely on an independent legal duty completely separate and apart from any ERISA plan and beyond any duty imposed or created by the ERISA statute or the relevant ERISA plan at issue. Plaintiff's claims do not seek any benefit under ERISA. Rather, Plaintiff seeks to enforce certain express and implied promises, agreements, and representations made by Defendant to Plaintiff, an out-of-network provider, through and in connection with a pre-authorization for a medically necessary surgical procedure, whereby Defendant acknowledged approval, and thus appropriate payment, for the medical services to be provided. Plaintiff is not a participant or beneficiary of the alleged ERISA plan at issue, and none of the claims asserted in Plaintiff's Amended Complaint are derivative of or brought in the capacity of an assignee of any ERISA plan participant or beneficiary. Rather, Plaintiff is an out-of-network provider who is not bound in any manner by any term(s) and/or condition(s) of the noted plan at issue. In its motion to dismiss the Amended Complaint, however, Defendant ignores this key distinction. Despite Defendant's conclusory arguments to the contrary, Plaintiff's claims in the Amended Complaint do not "relate to" an ERISA plan at all. The Amended Complaint does not seek damages pursuant to the terms of the purported ERISA plan at

1

issue, and nothing in the Amended Complaint directs the Court to consider the terms thereof in any way or otherwise requires an examination of any plan documents.  Rather, the damages sought in the Amended Complaint are those arising from an independent relationship between Plaintiff and Defendant.  Plaintiff does not and cannot point to anything in the Amended Complaint (or otherwise) to support its apparent proposition that Plaintiff's claims "relate to" an ERISA plan so as to deem them preempted.

Thus, for the reasons set forth below, Plaintiff's state law causes of action are not preempted by ERISA, and Plaintiff otherwise adequately pleads viable state law causes of action against Defendant that are sufficient to survive Defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  Accordingly, Defendant's Motion to Dismiss should be denied.  To the extent the Court is inclined to grant any portion of Defendant's motion, however, Plaintiff should be granted leave to amend to cure any purported deficiencies.

## STATEMENT OF FACTS AND RELEVANT PROCEDURAL BACKGROUND[1]

The Plaintiff, Dr. Haghighi, is a board certified and fellowship trained oral and maxillofacial surgeon licensed to practice medicine and dentistry in the State of New Jersey.  (See Amended Complaint ("Am. Compl."), Dkt. No. 8, at ¶ 1).  Dr. Haghighi practices at the Maxillofacial Surgery Center for Excellence, a provider of healthcare services organized and operating under the laws of the State of New Jersey.  (Id.).

On December 17, 2015, Dr. Haghighi performed highly complex, medically necessary maxillofacial surgery (the "**Procedure**") on patient Madison Guido (hereinafter, the "**Patient**" or "**M.G.**"), who received medical benefits through an insurance plan (the "**Plan**") issued and administered by the Defendant, Horizon.  (Id. at ¶¶ 3-4).  It is undisputed that Plaintiff does not

---

[1] The following Statement of Facts is derived from the allegations set forth in the Amended Complaint (Dkt. No. 8) which, for purposes of this Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, must be accepted as true and viewed in a light most favorable to Plaintiff.

participate in the Plan and, thus, is an out-of-network (i.e., non-participating) provider. (Id.; Notice of Removal ("NOR"), Dkt. No. 1, at ¶ 6).

Dr. Haghighi contacted Horizon prior to the surgery, and Horizon sent Dr. Haghighi written authorization pre-approving the Procedure as medically necessary and authorizing the rendering of such medically necessary surgical services to the Patient. (See Am. Compl., at ¶¶ 4, 21, 30, 35, 36). In reliance upon Defendant's express written promises and representations in pre-approving the Procedure, as well as upon Defendant's promises of payment for same, Plaintiff performed the pre-authorized and medically necessary surgery on the Patient on December 17, 2015, consisting of: segmental Le Fort 1 osteotomy with bone graft; bilateral sagittal osteotomies of the mandibular ramus; septoplasty; and bone marrow aspiration from the left anterior ileum. (Id. at ¶¶ 3, 4, 21).

Following the Procedure, Plaintiff billed Defendant $50,000.00 for the pre-authorized, medically necessary surgical services rendered, representing the reasonable, usual and customary rate charged for the procedure in question in the geographic area where the surgery was performed, taking into account the specialty and complexity of the services rendered, and Plaintiff's high level of training, qualifications, and expertise. (Id. at ¶ 6, 7, 11, 22). Despite Defendant explicitly authorizing Plaintiff, in writing, to perform the Procedure on its insured, M.G., with the understanding that Defendant would pay Plaintiff's reasonable, usual, and customary charges therefor, however, Defendant refused to pay the full amount and instead paid paying only $2,544.43, or 5.09%, of the total charges billed, leaving the Patient with a balance of $47,455.57 owed on the bill. (Id. at ¶ 7, 10, 11, 21).

As a result of this substantial underpayment, on October 4, 2019, Plaintiff initiated this action by filing a seven-count Complaint (the "**Original Complaint**") against Defendant in the Superior Court of New Jersey, Law Division, Monmouth County, Docket Number MON-L-003551-19, seeking reimbursement for the pre-authorized, medically necessary surgical services rendered to M.G. (See Original Complaint, attached as Exhibit A to NOR, Dkt. No. 1-1). Plaintiff served a copy of the

3

Summons and Original Complaint on Defendant on October 21, 2019, and Defendant filed a Notice of Removal ("**Notice**") on November 19, 2019, removing the matter to Federal Court pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446 on the basis of "complete preemption" under Section 502(a) of ERISA, 29 U.S.C. § 1132(a).  (See NOR).  The Notice stated that because Plaintiff's claims in the Original Complaint related to a self-insured medical benefits plan governed by ERISA, the Original Complaint was "removable from state court to this Court pursuant to 28 U.S.C. § 1441 because this Court has original jurisdiction under 28 U.S.C. § 1331."  (Id. ¶¶ 8-10).

Defendant moved to dismiss Plaintiff's Original Complaint on December 10, 2019, arguing that all of Plaintiff's claims were expressly preempted by ERISA under § 514(a) (codified at 29 U.S.C. § 1144(a)).  (See generally Dkt. No. 7).

On December 24, 2019, Plaintiff filed an Amended Complaint, which is presently before this Court.  (Dkt. No. 8).  The seven-count Amended Complaint asserts the following state law claims against Defendant: Breach of Contract and Violation of the Duty of Good Faith and Fair Dealing (Count I); Quantum Meruit (Count II); Unjust Enrichment (Count III); Tortious Interference with Economic Advantage (Count IV); Violation of the New Jersey Statutes, Regulations, and Other Legal Requirements Governing Payment for Medical Services (Count V); Negligent Misrepresentation (Count VI); and Promissory Legal and Equitable Estoppel (Count VII).  Both expressly, as well as implicitly by virtue of the amendments made to the Original Complaint as reflected in the Amended Complaint, the Amended Complaint alleges that Plaintiff's claims asserted therein arise under state common and statutory/regulatory law, rather than under ERISA.  (Compare Original Complaint, Dkt. No. 1-1, with Amended Complaint, Dkt. No. 8; see also Am. Compl., ¶ 5).  Each of the seven counts in the Amended Complaint are brought in Plaintiff's own right; the state law claims are not derivative of the Plan participant/beneficiary M.G.'s claims, if any, or an assignment therefrom.  (See generally Am. Compl.).

Plaintiff's state law claims set forth in the Amended Complaint seek to enforce the express

4

and implicit promises and representations made by Defendant to Plaintiff in the form of, <u>inter alia</u>, pre-approval of the Procedure, whereby Defendant acknowledged and confirmed authorization—and thus appropriate payment in the form of the reasonable, usual and customary charges—for the medical services to be provided.  Plaintiff alleges that Defendant authorized the Procedure in order to induce Plaintiff to perform same, knowing Plaintiff would rely upon Defendant's express pre-approval and written pre-authorization, as well as Defendant's historical reimbursements, and also knowing that Plaintiff understood and reasonably expected that he would be reimbursed for the reasonable, usual and customary amount charged for the procedure in question.  In short, the foundation for each of Plaintiff's claims asserted against Defendant in the Amended Complaint is that in authorizing the Procedure, Defendant agreed to pay the fair and reasonable rates for the services Plaintiff was going to provide, and Defendant improperly induced Plaintiff to render those services only to then turn around and refuse to pay more than "a small fraction" of the reasonable, usual and customary charges Defendant had agreed and promised to pay.

On January 28, 2020, Horizon renewed its challenge to the viability of Plaintiff's claims when it filed a Motion to Dismiss the Amended Complaint, arguing all of Plaintiff's claims in the Amended Complaint are preempted under ERISA § 514(a) and otherwise insufficiently pled under Federal pleading standards, and that the Court should dismiss the complaint in its entirety pursuant to <u>Rule</u> 12(b)(6) for failure to state a claim upon which relief can be granted.  (<u>See</u> Motion to Dismiss Am. Compl., Dkt. No. 14).  As demonstrated below, Defendant's motion lacks merit and should be denied.

## <u>STANDARD OF REVIEW</u>

The test in reviewing a <u>Rule</u> 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is whether, under any reasonable reading of the pleadings, the plaintiff would be entitled to relief.  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); <u>McGovern v. City of Philadelphia</u>, 554 F.3d 114, 115 (3d Cir. 2009).  The question is whether the plaintiff can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether the

5

plaintiff will ultimately prevail.  Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2001).  The Court must accept all factual allegations as true and draw all reasonable inferences from the facts alleged in the light most favorable to the plaintiff.  Phillips v. Cnty. of Alleghany, 515 F.3d 224, 228 (3d Cir. 2008).  Although the Court is not required to accept as true bare legal conclusions couched as factual allegations, a plaintiff need do no more than include factual allegations that are "enough to raise a right to relief above a speculative level," so that a claim "is plausible on its face."  Twombly, 550 U.S. at 555, 570; Phillips, 515 F.3d at 231.  The plaintiff is not required to detail all of the facts upon which a claim is based.  Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009).  A complaint is sufficient if it sets forth "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Twombly, 550 U.S. at 555.  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the allegations of the complaint, documents attached or specifically referenced in the complaint if the claims are based upon those documents, and matters of public record.  Winer Family Trust v. Queen, 503 F.3d 319, 327 (3d Cir. 2007).  The moving party bears the burden of showing that no claim has been presented.  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).  Dismissal for failure to state a claim is disfavored.  See Caldwell Trucking PRP Group v. Spaulding Composites Co., 890 F. Supp. 1247, 1252 (D.N.J. 1995).

Accepting all of Plaintiff's allegations as true and construing the Amended Complaint in the light most favorable to Plaintiff, the Court should readily perceive six well-pled, facially plausible and non-preempted claims for relief.[2]  Rather than assume the veracity of Plaintiff's factual allegations,

---

[2] For purposes of Defendant's current Motion to Dismiss, and without waiving the right to re-assert such claim in a more definite fashion and/or based on the discovery of further supporting facts through continuing investigation and in the course of discovery in this action, Plaintiff does not oppose that part of said Motion which seeks the dismissal of the New Jersey statutory and regulatory violation claim vis-à-vis state legal requirements governing payment for medical services set forth in Count V of the Amended Complaint.  Plaintiff expressly reserves the right to amend the complaint again within the time and in the manner prescribed by the Rules of Procedure in the event further discovery reveals fact support to maintain a viable claim for same.

4839-5226-2326, v. 1

Defendant's legal arguments largely ask the Court to do just the opposite, as if Defendant's motion were one for summary judgment. Defendant seeks to dismiss Plaintiff's Amended Complaint based on conclusory arguments predicated on a flawed analysis of the applicable facts and law. Notwithstanding Defendant's arguments to the contrary, as set forth in greater detail below, Defendant's motion to dismiss the Amended Complaint should be denied, as Plaintiff sufficiently pleads viable claims for relief under state law in each of Counts I, II, III, IV, VI, and VII of the Amended Complaint, none of which is preempted by ERISA. Plaintiff has asserted sufficient factual allegations which unquestionably put Defendant on notice of the grounds of Plaintiff's entitlement to relief. Accordingly, under our pleading standard as established in Twombly, and pursuant to Rule 12(b)(6), Defendant's motion to dismiss should be denied. Should the Court be inclined to rule otherwise and dismiss any of the counts of Plaintiff's Amended Complaint, however, we contend they should be dismissed without prejudice and with leave to amend. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Marks v. Struble, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).

## **LEGAL ARGUMENT**

### I.     **The State Law Causes of Action Asserted in Plaintiff's Amended Complaint Are Not Preempted by ERISA.**

In the Amended Complaint, Plaintiff has pleaded colorable state law claims and causes of action against Defendant.[3] Notwithstanding Defendant's insistence otherwise, Plaintiff does not "seek additional benefits [under] an ERISA plan," (see Defendant's Brief ("Def. Br."), Dkt. No. 14-1, at 1), Plaintiff's claims do not "relate to" an ERISA plan, and, therefore, Plaintiff's claims are not subject

---

[3] ERISA provides for two different types of preemption—complete preemption under Section 502(a) (the civil enforcement provision, codified at 29 U.S.C. § 1132(a)), and express preemption under Section 514 (codified at 29 U.S.C. § 1144(a)); these are separate and distinct standards. Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 270 (3d Cir. 2001). As noted, Defendant's ERISA preemption argument in support of its Motion to Dismiss is that Plaintiff's claims are preempted under ERISA § 514(a) because they "relate to" an ERISA benefit plan. Defendant explicitly does not argue complete preemption under § 502(a), noting in its brief that "Horizon does not concede that Plaintiffs are parties with standing under ERISA. However, because Plaintiffs have decided to delete references to ERISA under the amended pleading, Horizon does not address the legal requirements of a valid ERISA § 502(a) claim herein." (Def. Br. at 12 n.3). As Defendant has not argued complete preemption under § 502(a) in its Motion to Dismiss, Plaintiff is omitting any detailed, substantive § 502(a) preemption analysis herein.

4839-5226-2326, v. 1

to "express preemption" under § 514(a) of ERISA.  Plaintiff is proceeding on its own state law claims premised on and arising from independent legal duties under state law that stem from Defendant's representations, promises, and inducements to Plaintiff to render the surgical services in question. Nonetheless, a substantial portion of Defendant's brief improperly treats Plaintiff's claims in the Amended Complaint as if they were brought on the Patient's behalf and/or as assignee of her Plan benefits.  This although Defendant explicitly acknowledges in its motion papers, (see Def. Br. at 5), Plaintiff's claims are brought individually on their own behalf, and not as an assignee and designated representative of M.G. or any other Plan participant or beneficiary.  Recognizing this important distinction, Defendant's preemption arguments largely ring hollow and should be rejected.

Section 514(a) provides ERISA "shall supersede any and all State laws insofar as they . . . relate to any employee benefit plan" covered by the statute.  29 U.S.C. § 1144(a).  As the Supreme Court has explained, although the phrase "relate to" is "deliberately expansive," it is not boundless and should not be "taken to extend to the furthest stretch of its indeterminacy" in determining whether a state law is expressly preempted by § 514(a); otherwise, "for all practical purposes pre-emption would never run its course."  N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655-56 (1995); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46 (1987).  When interpreting and applying this express preemption provision, courts must "look [] to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive," rather than engage in "uncritical literalism" of the "unhelpful text" of the statute.  Travelers, 514 U.S. at 656; accord Egelhoff v. Egelhoff, 532 U.S. 141, 147 (2001); Joyce v. RJR Nabisco Holdings Corp., 126 F.3d 166, 173 (3d Cir. 1997) (noting the Supreme Court's directive in Travelers that "the objectives of ERISA must provide the basis for understanding the scope of Congress' intention to preempt state laws").  Additionally, every preemption analysis starts with a fundamental "presumption that Congress d[id] not intend to supplant state law."  Travelers, 514 U.S. at 654 (citing Maryland v. Louisiana, 451 U.S. 725, 746 (1981)); Health Maintenance Org. v. Whitman, 72 F.3d 1123, 1127 (3d

8

Cir. 1995) (same); see also Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 325 (1997) (explaining that courts must assume "that the historic police powers of the States were not to be superseded by [federal law] unless that was the clear and manifest purposes of Congress").

Against this backdrop, the Court has established that a state law or claim "relate[s] to" an ERISA plan, and is thus expressly preempted by § 514(a), if it: (1) "has a 'reference to' ERISA plans," or (2) "has an impermissible 'connection with' ERISA plans." Gobeille v. Liberty Mut. Ins. Co., 136 S. Ct. 936, 943 (2016) (citations omitted). With respect to the first category, a state law "refers to" an ERISA plan "'where a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation.'" Id. (quoting Dillingham, 519 U.S. at 325). Put differently, a state law claim is preempted by virtue of having a "reference" or "referring to" an ERISA plan where "the existence of [the] plan [is] a critical factor in establishing liability" and "the trial court's inquiry would be directed to the plan." 1975 Salaried Ret. Plan for Eligible Employees of Crucible, Inc. v. Nobers, 968 F.2d 401, 406 (3d Cir. 1992) (citations omitted); Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990) (explaining that a state law refers to an ERISA plan where adjudication of the state law claim requires an inquiry into the plan itself). With respect to the second category, determining whether a state law has an "impermissible connection with" an ERISA plan requires a court to "look both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans." Dillingham, 519 U.S. at 325 (citing Travelers, 514 U.S. at 656, 658-59). In light thereof, the Court has held a state law has the forbidden "connection" so as to trigger preemption if that state law "'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration,'" Gobeille, 136 S. Ct. at 943 (quoting Egelhoff, 532 U.S. at 148), or "if 'acute, albeit indirect, economic effects' of the state law 'force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers,'" id. (quoting

9

Travelers, 514 U.S. at 668).

The Supreme Court has recognized that the objective of ERISA's express preemption clause was "to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." Travelers, 514 U.S. at 657.  Accordingly, the Supreme Court has made clear that not all state law claims are preempted; § 514(a) does not preempt those state laws and claims that have "'only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability.'"  Travelers, 514 U.S. at 661 (quoting District of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125, 130 n.1 (1992)); see also Shaw v. Delta Air Lines, 463 U.S. 85, 100 n.21 (1983) ("Some state actions may affect employee benefit plans in too tenuous, remote or peripheral a manner to warrant a finding that the law 'relates to' the plan.").

Although the Third Circuit has not yet addressed the specific question of ERISA preemption in the context of a pre-answer motion to dismiss under facts and circumstances like those presented here, and recognizing that when raised in a pre-answer motion to dismiss consideration of the express preemption issue can be very fact-sensitive, the Court's attention is respectfully directed to a pair of recent decisions from this District which, Plaintiff submits, are directly on point in that the two cases involve facts and circumstances that are identical in all material respects to the case at bar and thoroughly review and analyze the exact same § 514(a) preemption issue raised by Defendant's Motion to Dismiss: Judge Thompson's decision in Glastein v. Aetna, Inc., Civ. No. 18-9262, 2018 U.S. Dist. LEXIS 162857 (D.N.J. Sept. 24, 2018)[4]; and Chief Judge Linares' decision in Small v. Oxford Health Ins., Inc., Civil Action No. 18-13120 (JLL), 2019 U.S. Dist. LEXIS 27878 (D.N.J. Feb. 21, 2019).[5]  In both of these cases, the court denied an insurance company's motion to dismiss, concluding the plaintiff healthcare provider's state law claims (including, inter alia, breach of contract

---

[4] A true and correct copy of Glastein v. Aetna, Inc., Civ. No. 18-9262, 2018 U.S. Dist. LEXIS 162857 (D.N.J. Sept. 24, 2018) is attached as Exhibit "A" to the Declaration of Counsel ("Decl. Counsel") filed contemporaneously herewith.

[5] See Decl. Counsel, Exh. "B."

4839-5226-2326, v. 1

and/or implied contract, promissory estoppel, quantum meruit, and fraudulent inducement), premised on the defendant insurance company's preauthorization of a medical procedure, were not preempted by § 514(a) (or at least could not appropriately be dismissed on such grounds at the pleadings stage of the case). Plaintiff respectfully submits that <u>Glastein</u> and <u>Small</u> are on all fours with the case at bar and the courts' persuasive analysis and conclusion in each should be adopted <u>in toto</u> by this Court to deny Defendant's motion to dismiss on the basis of § 514(a) express preemption.[6]

In <u>Glastein</u>, the plaintiff, Dr. Glastein, an orthopedic surgeon, provided medically necessary surgery to a patient who received medical benefits through Aetna. <u>Glastein</u>, 2018 U.S. Dist. LEXIS 162857, at *1. Like Dr. Haghighi with Horizon, Dr. Glastein was a non-participating/out-of-network provider who, prior to the surgery, received a written authorization for the procedure from Aetna. <u>Id.</u> Dr. Glastein billed Aetna $209,000, representing normal and reasonable charges given the complexity of the procedure and the plaintiff's qualifications, but Aetna refused to pay the full amount. <u>Id.</u> at *2. Dr. Glastein filed suit in state court, asserting claims for breach of contract, promissory estoppel, account stated, and fraudulent inducement. <u>Id.</u> at *3. After removing to federal court, Aetna moved to dismiss, arguing because Aetna provided health insurance to the patient through a plan covered by ERISA, the plaintiff's state law claims were preempted by § 514(a) of ERISA. <u>Id.</u> In denying Aetna's motion, Judge Thompson provided the following well-reasoned and instructive analysis:

> The state laws at issue here—breach of contract, promissory estoppel, account stated, and fraudulent inducement—neither "refer to" nor have an "impermissible connection with" an ERISA plan. As to whether these laws "refer to" an ERISA plan, the Complaint does not claim that Plaintiff was a contracting party to any ERISA plan. It does not allege that payment is due to him according to the terms of an ERISA plan, or even that any relevant ERISA plan provides reimbursement rates for the out-of-network services provided. To the contrary, the Complaint states that Plaintiff is entitled to recover $209,000 because that amount "represents normal and reasonable charges" under an implied-in-fact contract. (Compl. ¶¶ 17, 21.) The Complaint's factual assertions, assumed to be true for the purposes of the Motion to Dismiss, do nothing to suggest that the claims brought in this case will require examination of an

_____
[6] Notably, while Defendant conveniently omits any reference to either of these two cases (as well as many others) in its preemption argument in its brief, Defendant itself actually cites and relies upon Chief Judge Linares' decision in <u>Small</u> to support Defendant's position on another issue elsewhere in its brief. (<u>See</u> Def. Br. at 16).

11

ERISA plan.  The state laws here therefore do not "refer to" an ERISA plan.

Second, these state laws do not have an "impermissible connection with" an ERISA plan.  The central purpose of ERISA is to protect plan participants and beneficiaries. 29 U.S.C. §§ 1001, 1001b (repeatedly referring to the interests of participants and beneficiaries in the statute's findings and declarations of policy); Peter J. Wiedenbeck, Fed. Judicial Ctr., ERISA in the Courts 17 (2008) (describing ERISA as having been designed to protect consumers).  As several Circuit Courts have held, claims brought by a provider against an insurance company do not implicate ERISA's goals of protecting participants and beneficiaries.  Such claims therefore do not have an "impermissible connection with" an ERISA plan, and are not preempted.

Id. at *4-5 (internal footnote omitted).

Approximately five months later, Chief Judge Linares, citing Glastein "in a nearly identical case,"

recapped and adopted Judge Thompson's reasoning to reach the same conclusion in Small, adding:

Plaintiff's claims do not "relate to" an ERISA-regulated plan because the Complaint does not seek damages pursuant to the terms of Patient's benefit plan.  Indeed, nothing in the Complaint directs the Court to consider the terms of Patient's benefit plan. Instead, the Complaint seeks damages arising from an independent relationship between Plaintiff and Defendants.  Although Defendants argue to the contrary that Plaintiff is seeking additional benefits from Defendants for out-of-network services and that the Agreement mentions benefit payments that are governed by Patient's plan, (ECF No. 8-3 at 19-20), the Court's analysis is not altered here because, at this stage in the proceedings, the Court is concerned with the four corners of the Complaint, which bases Defendants' liability solely on representations not facially related to Patient's insurance plan.  Accordingly, the Court finds that Plaintiff's claims are not completely or expressly preempted by ERISA.

Small, 2019 U.S. Dist. LEXIS 27878, at *9-10.

Given that the relevant facts (as pled) here are virtually indistinguishable from those (as pled)

in the Glastein and Small cases, Judge Thompson's and Chief Judge Linares' analyses are especially

persuasive and should be applied with equal vigor here to demonstrate why Dr. Haghighi's state law

claims against Horizon are not preempted (or, at the very least, why dismissal on such grounds at this

juncture would be premature).  As in Glastein and Small, here Plaintiff's state law claims neither "refer

to" nor have an "impermissible connection with" an ERISA plan.  The Amended Complaint does not

claim Plaintiff was a contracting party to any ERISA plan, does not allege payment is due and owing

to Plaintiff according to the terms of an ERISA plan, and does not allege any relevant ERISA plan

12

provided reimbursement rates for the out-of-network services provided. To the contrary, the Amended Complaint states that Plaintiff was/is entitled to recover the amount sought because it represents normal and reasonable charges under an implied-in-fact contract created when the insurance company provided written pre-authorization for the procedure or services at issue. Thus, taking the Amended Complaint's factual assertions as true as is required for purposes of a pre-answer motion to dismiss, they do nothing to suggest that the claims brought in this case will require examination of an ERISA plan, and, therefore, those state laws do not "refer to" an ERISA plan so as to preempt Plaintiff's claims. Moreover, the state laws at issue do not have an "impermissible connection with" an ERISA plan, either: Claims brought by an out-of-network provider against an insurance company do not implicate ERISA's goals of protecting plan participants and beneficiaries. Thus, for precisely the same reasons Judge Thompson and Chief Judge Irenas found the state law claims brought by the providers in <u>Glastein</u> and <u>Small</u>, respectively, were not preempted and, therefore, should not be dismissed, this Court should reach the same conclusion and deny Defendant's motion.

Although Plaintiff has highlighted this pair of recent decisions from this District (<u>Glastein</u> and <u>Small</u>), by no means are these two cases outliers. To the contrary, these two cases reflect the trends both recently in New Jersey (both at the State and Federal level) and dating back multiple decades at the Federal Circuit Court of Appeals level, in which courts have held that authorizations issued by an insurance company to an out-of-network provider (as well as certain other pre-service representations) have created duties independent of ERISA so as to give rise to non-preempted, non-derivative, state law causes of action by the provider against the insurance company as a result thereof in cases pleading analogous (and often nearly identical) facts. <u>See, e.g.</u>, <u>Comprehensive Spine Care P.A. v. Oxford Health Ins., Inc.</u>, Civil Action No. 18-10036(JLL), 2018 U.S. Dist. LEXIS 207782 (D.N.J. Dec. 10, 2018)[7] (holding pre-authorization issued by insurance company created duties independent of, and not

---

[7] <u>See</u> Decl. Counsel, Exh. "C."

13

preempted by, ERISA, and allowing plaintiff to proceed with state law claims arising therefrom); Atl. Shore Surg. Assocs. v. Horizon Blue Cross Blue Shield of N.J., OCN-L-2792-17 (Law Div. Oct. 3, 2018)[8] (denying motion to dismiss and finding plaintiff's state law claims for breach of contract, promissory estoppel, account stated, and fraudulent inducement were not preempted by ERISA); Univ. Orthopaedic Assocs. v. Horizon Blue Cross Blue Shield of N.J., Docket No. MID-L-4493-18 (Law Div. Jan 11, 2019)[9] (holding no ERISA preemption and denying Horizon's motion to dismiss plaintiff out-of-network practice group's common law claims arising out Horizon's refusal to pay sums charged for pre-authorized surgery performed on plan participant); see also E. Coast Advanced Plastic Surgery v. Horizon Blue Cross Blue Shield of N.J., No. 18-cv-7718 (KM) (MAH), 2018 U.S. Dist. LEXIS 199891 (D.N.J. Nov. 26, 2018)[10] (finding plaintiff's state law causes of action against insurance company not preempted by ERISA).

   Along the same lines, the majority of Circuit Courts that have addressed the specific question of ERISA preemption in the context of and under the circumstances presented by the matter currently before this Court—i.e., whether § 514(a) preempts third-party, out-of-network medical providers' non-derivative, state common law claims for payment against an ERISA plan administrator or insurer premised on the latter's pre-authorization of a medical procedure and/or other similar representations or promises made to the provider—have held such claims are not preempted.  See, e.g., Mem'l Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236, 247, 250 (5th Cir. 1990) (finding unpersuasive the notion "that preemption in [a case brought by a provider] would further the congressional goal of protecting the interests of employees and their beneficiaries in employee benefit plans," and finding a claim for deceptive and unfair trade practices not preempted because the relation to the ERISA plan was "incidental" and the claim was "independent of the plan's actual obligations under the terms of

---

[8] See Decl. Counsel, Exh. "D."
[9] See Decl. Counsel, Exh. "E."
[10] See Decl. Counsel, Exh. "F."

4839-5226-2326, v. 1

the insurance policy"); In Home Health v. Prudential Ins. Co. of Am., 101 F.3d 600, 604-07 (8th Cir. 1997) (joining majority of circuits in holding ERISA does not preempt third-party provider's negligent misrepresentation and other state tort claims against ERISA plan administrator where provider was suing not as an assignee of an ERISA beneficiary but independently on the provider's own behalf claiming damages on account of administrator's misrepresentation of coverage); The Meadows v. Employers Health Ins., 47 F.3d 1006, 1009-11 (9th Cir. 1995) (healthcare provider's negligent misrepresentation, estoppel, and breach of contract claims based on non-payment for services despite prior receipt of assurance of coverage not preempted where provider filed suit not as an assignee of the patient but as a third-party healthcare provider for claims that were non-derivative and independent of those the patient might have had); Hospice of Metro Denver v. Group Health Ins. of Okla., Inc., 944 F.2d 752, 756 (10th Cir. 1991) (explaining that "action brought by a healthcare provider to recover promised payment from an insurance carrier is distinct from an action brought by a plan participant against the insurer seeking recovery of benefits due under the terms of the plan," with the latter being preempted by ERISA while the former is not, and holding provider's promissory estoppel claim not preempted because it was "state law claim which does not affect the relations among the principal ERISA entities," and preemption could result in a reluctance of health care providers to extend care without prepayment); Lordmann Enters., Inc. v. Equicor, Inc., 32 F.3d 1529, 1533-34 (11th Cir. 1994) (finding provider's negligent misrepresentation claim against insurer not preempted because the claim was only indirectly related to the ERISA plan at issue and providers need to be able to freely rely on insurers' representations as to coverage).[11]

---

[11] To wit, only one Federal Court of Appeals has reached the opposite conclusion, and that was the Sixth Circuit in Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272 (6th Cir. 1991) (finding ERISA preempted provider's negligent misrepresentation claim against employee benefit plan). Notably, however, that decision is oft recognized as "something of an outlier" and "an exception to the trend," and has been described as "a poorly reasoned outlier in the face of the strong trend in the bulk of the cases considering healthcare provider claims in [similar] contexts." See, e.g., Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund, 538 F.3d 594, 600-01 (7th Cir. 2008); Aesthetic & Reconstructive Breast Ctr., LLC v. United Healthcare Grp., Inc., 367 F. Supp. 3d 1, 8-9 (D. Conn. 2019).

15

Although it appears that the weight of authority holds § 514(a) preemption does not apply in the case of state law claims like the ones asserted in this case, by an out-of-network provider (such as Plaintiff) against an ERISA plan administrator (such as Defendant), seeking payment for services rendered based on representations expressly or impliedly made to the provider in issuing a pre-authorization for the services, Plaintiff recognizes that certain cases in this line of case law may be at odds with this Court's decisions in two cases Your Honor decided in a one week span in the middle of 2018 – <u>Atl. Shore Surgical Associates v. Horizon Blue Cross Blue Shield</u>, No. 17-07534, 2018 U.S. Dist. LEXIS 90734 (D.N.J. May 31, 2018)[12], and <u>Advanced Orthopedics and Sports Med. Inst. v. Empire Blue Cross Blue Shield</u>, No. 17-8697, 2018 U.S. Dist. LEXIS 96814 (D.N.J. June 7, 2018)[13] – both of which are cited and relied upon by Defendant in its brief, and both of which granted an insurance company's motion to dismiss an out-of-network provider's state law claims as expressly preempted by ERISA, under circumstances closely analogous to those presented in <u>Glastein</u> and <u>Small</u>, as well as here.  While each of those two cases involved an out-of-network provider obtaining prior authorization to perform a medical procedure and subsequently bringing common law claims against the insurer, it is respectfully submitted that they are factually and analytically distinguishable from the case at bar in a legally significant way that justifies reaching a different outcome here.  As Judge Thompson and Chief Judge Linares have each observed in subsequent decisions, in the two 2018 cases decided by Your Honor, review of the plaintiffs' complaints revealed that it had been expressly indicated to the plaintiffs that the pre-authorizations were subject to the terms of an ERISA benefit plan and that the court could not resolve the disputes without referencing and interpreting said plan.  In sharp contrast, as Judge Thompson observed, in cases like <u>Glastein</u>, as in the case at bar, the complaint provided no reason why the Court would need to reference an ERISA plan to adjudicate the plaintiff's claims.  The same is true here.  Indeed, the specific factual allegation vis-à-vis the written

---

[12] <u>See</u> Decl. Counsel, Exh. "G."
[13] <u>See</u> Decl. Counsel, Exh. "H."

16

pre-authorization Plaintiff received from Defendant simply states that Plaintiff received written confirmation of pre-approval at some point prior to performing the Procedure; this is precisely the type of basic, bare allegation made in cases like <u>Glastein</u> and <u>Small</u>.

  With the exception of the two aforementioned cases decided by Your Honor on May 31 and June 7, 2018, respectively, the remainder of the authority cited in Defendant's preemption argument in its brief is inapplicable or irrelevant to the issue raised in the present matter.

  Courts in this District and elsewhere have not, as Defendant seems to suggest, consistently found state law causes of action like those asserted by Plaintiff in the Amended Complaint to be expressly preempted by ERISA.  The remainder of the cases upon which Defendant relies in asserting Plaintiff's claims are preempted are distinguishable in factually and legally significant ways and thus inapposite.  For example, Defendant cites <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41 (1987), <u>Pryzbowski v. U.S. Healthcare, Inc.</u>, 245 F.3d 266 (3d Cir. 2001), and <u>Hartman v. Wilkes-Barre Gen. Hosp.</u>, 237 F. Supp. 2d 552 (M.D. Pa. 2002), to support its proposition that courts "have repeatedly construed ERISA [§ 514] to preempt a broad range of state law claims related to demands for payment of ERISA benefits, including negligence, breach of contract, estoppel, misrepresentation, and the like." (See Dkt. No. 14-1, at 9).  Although Defendant is correct that the courts in these cases found a variety of "state law claims related to demands for payment of ERISA benefits" to be expressly preempted by § 514(a), all four of these cases were brought by plaintiffs who were ERISA plan beneficiaries or participants; <u>i.e.</u>, each of the plaintiffs was an insured (or beneficiary of some employee welfare plan covered by ERISA) who brought suit related to benefits and coverage under *his or her own* respective ERISA plan, and in each case the court held that ERISA expressly preempted the plaintiff's state law claims and causes of action he or she had asserted against the insurance provider or ERISA plan administrator for payment of plan benefits.  See <u>Pilot Life</u>, 481 U.S. at 43 (holding ERISA preempted plaintiff employee's state common law claims against defendant insurer based on insurer's failure to pay long-term disability benefits under group insurance policy);

17

Pryzbowski, 245 F.3d 266, 273, 278 (preempting plaintiff enrollee/participant's common law claims against defendant HMO/plan administrator challenging administration of benefits based on alleged improper processing of claim therefor under employee benefit plan); Hartman, 237 F. Supp. 2d at 554-56 (dismissing as preempted plaintiff employee's state law claims against defendant insurance company for wrongful denial of long-term disability benefits).  These cases are of little value in evaluating the question of preemption vis-à-vis the non-derivative, state law claims of an out-of-network, third-party provider who is not a party to an ERISA plan nor a participant or beneficiary thereof.  Accordingly, equally misplaced and unavailing is Defendant's reliance upon the other cases it cites, including Cajoeco, LLC v. Ben. Plans Admin. Servs., Docket No. A-4364-16T4, 2019 N.J. Super. Unpub. LEXIS 964 (App. Div. Apr. 25, 2019)[14]; Kollman v. Hewitt Assocs., LLC, 487 F.3d 139, 150 (3d Cir. 2007); Nat'l Sec. Sys. v. Iola, 700 F.3d 65 (3d Cir. 2012); Grimes v. Prudential Fin., Inc., Civil Action No. 09-419 (FLW), 2010 U.S. Dist. LEXIS 64530, at *50-52 (D.N.J. June 29, 2010)[15]; Hocheiser v. Liberty Mut. Ins. Co., Civil Action No. 17-6096 (FLW)(DEA), 2018 U.S. Dist. LEXIS 47870, at *27-30 (D.N.J. Mar. 23, 2018).[16]

Here, Plaintiff's claims are related to the amount of payment received, premised on implied agreements and representations that allegedly arose in the course of dealings between the parties, and not claims seeking coverage under a given health plan.  They do not require the Court to look at the terms of any ERISA plan that exists or existed between Defendant and the Patient, as Plaintiff was not a party to any such plan, and there is nothing in the Complaint suggesting the resolution of Plaintiff's independent, non-derivative state law claims would require review of any Plan documents.  The pleadings do nothing to suggest Plaintiff's claims will "require examination of an ERISA plan" or have any impact on any ERISA-regulated relationship (because they will not).  Accordingly, for all

---

[14] See Decl. Counsel, Exh. "I."
[15] See Decl. Counsel, Exh. "J."
[16] See Decl. Counsel, Exh. "K."

4839-5226-2326, v. 1

these reasons, there is no basis to find Plaintiff's claims preempted by ERISA, and Defendant's motion to dismiss should be denied.

**II.**     <u>**Plaintiff's State Law Claims Are Sufficiently Pleaded to Survive Dismissal.**</u>

As set forth in greater detail below, Defendant's motion to dismiss Plaintiff's state common law causes of action for failure to state a claim should be denied, as Plaintiff sufficiently pleads viable claims for relief in each of Counts I, II, III, IV, VI, and VII of the Amended Complaint.

    **A.**     **Plaintiff Sufficiently Pleads a Plausible Claim for Breach of Contract.**

As indicated above, Plaintiff intends to proceed on its own individual claims at this juncture, rather than in a derivative capacity as an assignee or designated representation of the Patient or any other Plan beneficiary or participant.  With respect to the claim(s) sounding in contract, Plaintiff seeks to pursue a claim for breach of implied contract (or contract-implied-in-fact)—specifically, that Defendant's pre-authorization created an implied-in-fact contract to pay Plaintiff for the medical services rendered to M.G.  Although Plaintiff believes it has adequately alleged that by authorizing the surgery, Defendant agreed to pay the fair and reasonable rates for the medical services provided by Plaintiff, Plaintiff recognizes that there may be some outstanding ambiguity in Count I of the Amended Complaint that was not previously addressed when revising the Original Complaint. Accordingly, Plaintiff hereby requests that the Court grant Plaintiff leave to amend its contractual claim(s) in Count I to clearly articulate the factual bases for the claimed rights, duties, and breaches being asserted, and the capacity in which some claim(s) is/are being brought.  Plaintiff respectfully submits that the remainder of the Amended Complaint as presently drafted is and will be unaffected by the contemplated amendments directed to the contractual claims asserted therein.

    **B.**     **Plaintiff Sufficiently Pleads Plausible Claims for Quantum Meruit and Unjust Enrichment.**

The Amended Complaint contains sufficient factual allegations to support Plaintiff's claims for quantum meruit and unjust enrichment.  Notwithstanding Defendant's argument to the contrary,

19

Plaintiff's assertion of breach of contract as a separate count in the Amended Complaint does not render its quantum meruit and unjust enrichment claims (i.e., its quasi-contract claims) facially invalid as a matter of law.  Because Plaintiff's Amended Complaint sufficiently pleads causes of action for quantum meruit and unjust enrichment, Defendant's motion to dismiss must be denied as to these claims.

Defendant's argument—that Plaintiff's quantum meruit and unjust enrichment claims fail (or could fail) as a matter of law if and to the extent it is determined that Plaintiff "stands in privity of contract with Horizon under the Plan" because "it is well-established that courts may not impose quasi-contractual liability if an express contract exists concerning the same subject matter," (see Dkt. No. 14-1, at 16)—flies in the face of this district's judicial practice and Rule 8(d)(2) and (3), which entitle a plaintiff to plead alternative and inconsistent causes of action arising out of the same facts.

As a threshold matter, Plaintiff does not dispute that a plaintiff cannot recover on both an unjust enrichment claim and a breach of contract claim.  See Duffy v. Charles Schwab & Co., 123 F. Supp. 2d 802, 814 (D.N.J. 2000) ("[q]uasi-contract liability will not be imposed when a valid, unrescinded contract governs the rights of the parties[,]" and, therefore, "recovery based on a quasi-contract theory is mutually exclusive of a recovery based on a contract theory") (citing Suburban Transfer Serv. v. Beech Holdings, Inc., 716 F.2d 220, 226 (3d Cir. 1983)).  Federal pleading standards are clear, however, that a party may **plead** quasi-contract claims such as quantum meruit and unjust enrichment **in the alternative** to contract-based claims.  See Maniscalco v. Brother Int'l Corp. (USA), 627 F. Supp. 2d 494, 505 (D.N.J. 2009) (citing In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 544 (D.N.J. 2004)).

This Court has repeatedly recognized that while a plaintiff ultimately may be precluded from recovering on both claims, a plaintiff is not precluded from pleading both as alternative theories of recovery that will survive a Rule 12(b)(6) motion to dismiss.  See, e.g., PNY Techs., Inc. v. Lorenzo Salhi & Silicon Valley Solutions, Inc., No. 12-04916, 2013 U.S. Dist. LEXIS 110877, at *19-20

20

(D.N.J. Aug. 5, 2013)[17]; <u>Ass'n of N.J. Chiropractors v. AETNA, Inc.</u>, No. 09-3761, 2012 U.S. Dist. LEXIS 64413, at *33 (D.N.J. May 8, 2012)[18]; <u>Mendez v. Avis Budget Group, Inc.</u>, No. 11-6537, 2012 U.S. Dist. LEXIS 50775, at *8 (D.N.J. Apr. 20, 2012)[19]; <u>MK Strategies, LLC v. Ann Taylor Stores Corp.</u>, 567 F. Supp. 2d 729, 736 (D.N.J. 2008). Defendant offers no authority to the contrary; instead the two cases Defendant cites to support the proposition that a quasi-contract claim may not exist where an express contract covers the same subject matter—<u>Shalita v. Twp. of Washington</u>, 270 <u>N.J. Super.</u> 84, 90 (App. Div. 1994), and <u>Suburban Transfer Serv. v. Beech Holdings, Inc.</u>, 716 F.2d 220, 226-27 (3d Cir. 1983)—involve the dismissal of an unjust enrichment claim at summary judgment or later. In each case, dismissal of the unjust enrichment claim was explicitly premised on the court having already held the express contract valid and operative. <u>Id.</u> Here, however, at this early stage of litigation, no such determination has been or can be made, and Defendant's motion to dismiss is premature with respect to Plaintiff's claims for quantum meruit and unjust enrichment. In any event, Defendant mistakes the allegations in Plaintiff's pleading—specifically those regarding the underlying representations and course of conduct that Plaintiff contends gave rise to an implied-in-fact contract between Plaintiff and Defendant as to the reimbursement for services rendered in connection with M.G.'s Procedure—for a conclusive determination that an actual, express, valid contract exists and governs these disputes. <u>See</u> <u>Goldstein v. Elk Lighting, Inc.</u>, Civil Action No. 3:12-CV-168, 2013 U.S. Dist. LEXIS 30569, at *23-24 (M.D. Pa. Mar. 4, 2013)[20] ("The court rejected any argument that the alleged written contract precluded plaintiff from raising an unjust enrichment claim, stating, 'defendants argue that plaintiff has lost the ability to plead unjust enrichment in the alternative because plaintiff has also proffered a purportedly valid express contract; however, such pleadings are not inconsistent until the plaintiff has established the contract as valid and governing the dispute.'"

---

[17] <u>See</u> Decl. Counsel, Exh. "L."
[18] <u>See</u> Decl. Counsel, Exh. "M."
[19] <u>See</u> Decl. Counsel, Exh. "N."
[20] <u>See</u> Decl. Counsel, Exh. "O."

(citations omitted)).  Accordingly, Plaintiff's claim for unjust enrichment should not be dismissed solely by virtue of Plaintiff having also alleged breach of contract in the alternative.

> ### C.   Plaintiff Sufficiently Pleads a Plausible Claim for Tortious Interference with Economic Advantage.

Plaintiff, in Count IV of the Amended Complaint, has properly pled a cause of action against Defendant for tortious interference with economic advantage.  To state a claim for tortious interference under New Jersey law, a plaintiff must allege four elements: (1) an existing or reasonable expectation of economic benefit or advantage; (2) the defendant's wrongful, intentional interference with that expectancy; (3) a causal connection between the interference and failure to receive the anticipated benefit; and (4) actual damages.  <u>Printing Mart-Morristown v. Sharp Elecs. Corp.</u>, 116 <u>N.J.</u> 739, 751 (1989).  Here, Plaintiff has properly pled each of these elements.  First, Plaintiff alleges the existence of a reasonable expectation of economic advantage or benefit belonging or accruing to Plaintiff in connection with the pre-approved services rendered.  (<u>See</u> Am. Compl. at ¶ 29).  Second, Plaintiff alleges that Defendant acted with knowledge of this reasonable expectancy of obtaining economic advantage in exchange for the performance of services, and of Plaintiff's expectation of receipt of reasonable and customary reimbursement for the services rendered in good faith, and in reliance upon Defendant's affirmative pre-approval acknowledgment that the services in question were authorized as medically necessary.  (<u>Id.</u> at ¶ 30).  Plaintiff further alleges Defendant wrongfully and intentionally interfered with Plaintiff's reasonable expectancy of economic advantage or benefit as set forth above and in the manner and as set forth in the Amended Complaint.  (<u>Id.</u> at ¶ 31).  Third, Plaintiff alleges a causal connection between Defendant's interference and failure to receive the anticipated benefit, in that but for Defendant's wrongful refusal to reimburse Plaintiff for the reasonable and customary or fair reimbursement to which Plaintiff is entitled under the circumstances, Plaintiff would have realized the economic advantage or benefit anticipated.  (<u>Id.</u>).  Lastly, Plaintiff alleges actual damages as a result.  (<u>Id.</u>).

22

Defendant contends Plaintiff has not properly pled its cause of action for tortious interference, arguing that Plaintiff has failed to "identify a protected interest Plaintiffs had in 100% reimbursement under the Plan, let alone set forth facts as to how Horizon intentionally and maliciously sought to interfere with that interest." (Dkt. No. 14-1, at 16-17). As a preliminary manner, Plaintiff has indeed identified a specific protected interest with which Defendant has interfered, as set forth above. Yet, under the liberal pleading requirements of the Federal Rules, it is not even necessary for Plaintiff, at the pleadings stage, to identify that interest with any greater detail than it already has. As for Defendant's other arguments with respect to Plaintiff's tortious interference claim, Defendant improperly treats and characterizes Plaintiff's claim as one that alleges interference by Defendant with its own contractual relationship with Plaintiff. As set forth elsewhere herein, however, Plaintiff was not and does not claim to have be a party to the purported "contract" (the Plan) at issue. Accordingly, Defendant's challenges to the viability of the Plaintiff's tortious interference claim fail as a matter of fact and law. Nonetheless, to the extent this Court determines Count IV is not sufficiently pled, the appropriate remedy is to allow Plaintiff an opportunity to cure any perceived deficiency by amending the complaint. Plaintiff anticipates that its amended pleading, if permitted, will cure any perceived deficiency.

### D.     Plaintiff Sufficiently Pleads a Plausible Claim for Negligent Misrepresentation

In Count VI, Plaintiff asserts a viable cause of action for negligent misrepresentation against Defendant arising out of the false and/or misleading affirmative representations and intentional omissions of material facts made by Defendant in connection with the pre-approval and authorization of the Procedure. To state a viable claim for negligent misrepresentation, a party must allege "an incorrect statement, negligently made and justifiably relied on, which results in economic loss." Konover Constr. Corp. v. East Coast Const. Servs. Corp., 420 F. Supp. 2d, 366, 370 (D.N.J. 2006) (quotations omitted). In its motion papers, Defendant does not actually challenge the adequacy of the Amended Complaint's factual allegations in support of Plaintiff's negligent misrepresentation

23

claim; rather the sole bases for Defendant's challenge to this claim are its contentions that: (1) such a "tort claim is . . . barred because the Amended Complaint sounds in contract"; and (2) Plaintiff's reliance was unreasonable as a factual matter. (See Def. Br. at 19-20). Defendants' arguments are addressed in turn below.[21]

Defendant's challenges to the viability of Plaintiff's negligent misrepresentation claim are misplaced. Defendant's first contention—that Plaintiff's claim is "barred because the Amended Complaint sounds in contract" and the "'contract' upon which Plaintiffs rely (the Plan) expressly notes that the Plan's utilization review procedures for evaluating medical necessity – which include preauthorization – do not guarantee what Horizon will pay, and that payment is based on the terms and conditions of the Plan," (see Def. Br. at 19)—is substantively and procedurally improper and puts the proverbial "cart before the horse." As is clear from the face of the Amended Complaint, and as explained ad nauseum above, Plaintiff's state law tort claims, including the negligent misrepresentation claim in Count VI of the Amended Complaint, have nothing to do whatsoever with ERISA, the Plan, or what the Plan does and/or does not say or provide. Moreover, Defendant's reliance upon language in the Plan documents (apparently to cast doubt and call into question the adequacy and legal import of the factual allegations in the Amended Complaint) is further unabashedly misplaced given the fact that it is undisputed that Plaintiff was not a beneficiary or participant of the Plan or a party to the so-called Plan "contract," but rather was a non-participating, out-of-network provider. Defendant's references to the substance of the Plan documents is nothing more than a red herring.

Defendant's next attack vis-à-vis Plaintiff's negligent misrepresentation claim is premised on a singularly narrow reading of a cherry-picked snippet from the Amended Complaint taken out of

---

[21] Plaintiff limits the scope of its argument to the two sole issues raised by Defendant, and does so for the same reasons Defendant limits its argument as it does vis-à-vis Plaintiff's negligent misrepresentation claim: Plaintiff has sufficiently pleaded the elements of this claim. Plaintiff reserves the right to address any other aspect of its claim for negligent misrepresentation should it be further challenged by Defendant.

context and then viewed in the light least favorable to Plaintiff, notwithstanding that this is a <u>Rule</u> 12(b)(6) motion to dismiss.  Defendant mischaracterizes the <u>actual</u> allegations in the Amended Complaint and instead baldly asserts in its brief: "[A]ccording to the pleading, Plaintiffs' expectation of payment of 100% reimbursement of submitted fees is not actually rooted in Horizon's preauthorization, but rather in reliance on the 'the Plaintiffs and staff…upon a good faith assessment of prior reimbursement by Horizon, or others for surgical procedures of similar complexity, with the same or similar CPT codes, for which Plaintiffs received substantial reimbursement.'"  (Def. Br. at 19-20 (quoting Am. Compl. ¶ 37)).  Defendant then proceeds to speculate:

> Thus, according to Plaintiffs, they are entitled to 100% reimbursement of their billed charges here because they have compared the Plan's reimbursement for the Patient's procedure to reimbursements associated with procedures performed on others.  It goes without saying that comparing another patient's out-of-network benefit under a *different plan* does not in any way establish a right to a certain amount of benefits under the subject Plan, let alone establish how the Plan's payment after-the-fact translates to a *pre*-service misrepresentation.  If anything, Count Six gives rise to an inference that it was *Plaintiffs'* mistake in assuming that payments received in the past from other payers under different plans would dictate what this Plan would pay for this Patient's service. By any standard of review, Count Five fails to state a plausible claim for negligent misrepresentation and must be dismissed.

(Def. Br. at 20) (emphasis in original).

Defendant's analysis and argument is deeply flawed for several reasons, including, <u>inter</u> <u>alia</u>: (i) Defendant grossly mischaracterizes Plaintiff's actual allegations by cherry-picking a small segment of a significantly longer paragraph in the Amended Complaint and then quoting it out-of-context; (ii) Defendant's entire line of reasoning is nothing but unsupported and conclusory speculation; and (iii) turns the <u>Rule</u> 12(b)(6) standard on its head by drawing *unreasonable* inferences from the facts alleged, and doing so in the light *least* favorable to Plaintiff.  <u>Cf.</u> <u>Phillips</u>, 515 F.3d at 228.  Plainly, a simple reading of Count VI of the Amended Complaint reveals that Plaintiff does <u>not</u> allege that the sole reason 100% reimbursement of the billed charges was expected was on the basis of how the Plan had reimbursed for other procedures performed on other patients in the past.  (<u>See</u> Am. Compl. ¶¶ 35-37).  Defendants' distortion of Plaintiff's allegations is precisely the type of fact-finding exercise to

25

be avoided in evaluating the sufficiency of a complaint on a pre-answer motion to dismiss.

     **E.**     **Plaintiff Sufficiently Pleads a Plausible Claim for Promissory and Equitable Estoppel.**

Lastly, Plaintiff has adequately pleaded a claim for promissory estoppel, as well as a viable theory of equitable estoppel, in Count VII of the Amended Complaint.  Simply, Plaintiff's Amended Complaint contains sufficient factual allegations to state a viable, plausible claim against Defendant for promissory estoppel in Count VII, and the allegations in the Amended Complaint are more than sufficient to apprise Defendant of the alleged improper misconduct.

In order to state a claim for promissory estoppel, a plaintiff must allege the following elements: (1) a clear and definite promise; (2) that the promise was made with the expectation the promisee would rely thereon; (3) that the promisee did in fact reasonably rely on the promise; and (4) the incurrence of detriment of a definite and substantial nature in reliance on the promise.  Cotter v. Newark Hous. Auth., 422 Fed. App'x 95, 99 (3d Cir. 2011) (citing Toll Bros., Inc. v. Bd. of Chosen Freeholders of Cnty. of Burlington, 194 N.J. 223, 253 (2008)).  The fundamental justification for the doctrine is to avoid the substantial hardship or injustice which would result if such a promise were not enforced.  Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc., 307 N.J. Super. 461, 469 (App. Div. 1998).

In the Amended Complaint, Plaintiff alleges that in providing pre-authorization pre-approving the Procedure at issue as medically necessary, Defendant promised that Plaintiff would be paid at the reasonable and customary rate for his services, taking into account location, sophistication of the procedure, and Plaintiff's qualifications.  (Am. Compl. ¶¶ 36, 37, 40).  Second, Plaintiff alleges that when Defendant made this promise, Defendant had a "clear understanding" that Plaintiff would rely thereupon.  (Id. at ¶ 37).  Third, Plaintiff alleges he did in fact rely on Defendant's promise by performing the Procedure on M.G., and that Plaintiff has suffered definite and substantial damages as a result of Defendant's refusal to pay—an amount equal to no less than $47,455.57.  (Id. at ¶¶ 38-41).  Thus, it is readily apparent from the face of the Amended Complaint that Plaintiff has made the

necessary showing to maintain a colorable claim of promissory estoppel sufficient to survive Defendant's motion to dismiss.  See, e.g., Small, 2019 U.S. Dist. LEXIS 27878, at *15-16 (denying motion to dismiss promissory estoppel claim supported by similar factual allegations in pleading); E. Coast Advanced Plastic Surgery v. Aetna, Inc., No. 17-13676, 2018 U.S. Dist. LEXIS 103650 (D.N.J. June 21, 2018)[22] (finding plaintiff provider sufficiently alleged promissory estoppel "because upon pre-authorizing the procedures, [defendant] should have understood that it was reasonable for Plaintiff to rely on the representations . . which Plaintiff relied on to its detriment").  Defendant's apparent suggestion that the Amended Complaint merely alleges what amounts to a "'general expectation' of a benefit [that] is insufficient to support a promissory estoppel claim," (Def. Br. at 21), is simply inaccurate and verifiably belied by the recent cases in this District confirming the sufficiency of the same factual allegations upon which Plaintiff's claim is based.

Equally unavailing is Defendant's argument that Plaintiff's promissory estoppel claim should be dismissed because "recovery on a quasi-contract theory of promissory estoppel is not available when an express contract exists concerning the same subject matter."  (See Def. Br. at 22 (citing New York-Connecticut Dev. Corp. v. Blinds-To-Go (U.S.) Inc., 449 N.J. Super. 542, 543 (App. Div. 2017); Shalita, 270 N.J. Super. at 90).  As previously noted above, Plaintiff does not dispute that a plaintiff cannot recover on both a promissory estoppel claim and a breach of contract claim premised on an express contract concerning the same subject matter.  See Duffy, 123 F. Supp. 2d at 814 ("[q]uasi-contract liability will not be imposed when a valid, unrescinded contract governs the rights of the parties[,]" and, therefore, "recovery based on a quasi-contract theory is mutually exclusive of a recovery based on a contract theory") (citing Suburban Transfer Serv., 716 F.2d at 226).  Defendant's apparent suggestion that this proposition supports pre-answer dismissal of Plaintiff's promissory estoppel claim, however, ignores very well-settled, rudimentary federal pleading standards that clearly

---

[22] See Decl. Counsel, Exh. "P."

27

allow a party to **plead** quasi-contract claims such as promissory estoppel **in the alternative** to contract-based claims.  See Maniscalco, 627 F. Supp. 2d at 505 (citing In re K-Dur Antitrust Litig., 338 F. Supp. 2d at 544); see also MK Strategies, 567 F. Supp. 2d at 736 (recognizing that while a plaintiff ultimately may be precluded from recovering on both claims, a plaintiff is not precluded from pleading both as alternative theories of recovery that will survive a Rule 12(b)(6) motion to dismiss). Indeed, even the case law cited by Defendant in support of its argument on this issue expressly recognize this.  See, e.g. Blinds-To-Go, 449 N.J. Super. at 557 ("Although a party may plead and pursue alternative, and even inconsistent, theories, a party is not entitled to recover on inconsistent theories.").

In any event, the position taken by Defendant is especially disingenuous given that Defendant itself explicitly argues at length throughout its brief that the Court should dismiss Plaintiff's breach of contract claim because there was/is no contract between the parties.  Equally disingenuous is Defendant's brazen assertion accusing Plaintiff of "conced[ing] the existence of a written contract (the Plan) concerning the same subject matter (Plaintiff's right to reimbursement)," (see Def. Br. at 22).  Simply put, Defendant's contentions do not hold water and should be readily rejected.

Finally, as pled, the same underlying factual allegations substantiating Plaintiff's claim for promissory estoppel likewise support Plaintiff's equitable estoppel claim—i.e., that Defendant, based on its conduct and dealings with Plaintiff, as described above and in the Amended Complaint, should be equitably estopped from denying its obligation to reimburse Plaintiff for the services rendered in an amount equal to the fair and reasonable rate customarily charged for same.  (See Am. Compl. at ¶¶ 40-41).  Application of equitable estoppel based on the circumstances alleged in the Amended Complaint would serve the doctrine's purpose of "prevent[ing] a party's disavowal of previous conduct if such repudiation would not be responsive to the demands of justice and good conscience."  Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339 (1979)

28

(internal quotation marks and citation omitted).

Thus, for all these reasons, Count VII of the Amended Complaint sets forth viable a viable claim for relief under theories of promissory and equitable estoppel, and should not be dismissed.

**III.     Plaintiff Should Be Granted Leave to Amend if Plaintiff's State Law Claims Are Found to Be Preempted or Inadequately Pleaded.**

In the event the Court finds the state law claims asserted by Plaintiff in the Amended Complaint are deficiently pleaded or preempted, in whole or in part, it is respectfully submitted that the Court should either: (i) grant Plaintiff leave to amend to cure any such deficiencies or recast and re-plead the preempted causes of action as ERISA claims, see, e.g., Miller v. Aetna Healthcare, Civ. A. No. 01-2443, 2001 U.S. Dist. LEXIS 20801, at *5-6 (E.D. Pa. Dec. 12, 2001)[23] (explaining that when a plaintiff's claims are preempted by ERISA, "dismissal without prejudice to assert an ERISA claim is an appropriate course"); or (b) treat the preempted claim as a federal claim asserted under § 502(a), see Carducci v. Aetna U.S. Healthcare, 247 F. Supp. 2d 596, 607 (D.N.J. 2003).  See also Grayson, 293 F.3d at 108; Marks, 347 F. Supp. 2d at 149; Fed. R. Civ. P. 15(a)(2) (instructing courts to "freely give leave [to amend] when justice so requires"); Foman v. Davis, 371 U.S. 178, 182 (1962) (absent good cause for denial, such as undue delay, undue prejudice, etc., "the leave sought should . . . be 'freely given'"); see also Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 469 (D.N.J. 1990) ("substantive motion practice upon [a] proposed new claim or defense" is not required in seeking amendment).  Alternatively, should the Court nevertheless remain inclined to dismiss any counts of Plaintiff's Amended Complaint, they should be dismissed without prejudice.  Fed. R. Civ. P. 15(a)(1)(B).

---

[23] See Decl. Counsel, Exh. "Q."

## **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully submits that Defendant's Motion to Dismiss the Amended Complaint should be denied.  In the event the Defendant's Motion to Dismiss is granted in any respect, in whole or in part, however, Plaintiff respectfully requests such dismissal be made without prejudice and Plaintiff be granted leave to amend.

Respectfully submitted,

STARK & STARK
A Professional Corporation

By: /s/ *Thomas J. Pryor*
         THOMAS J. PRYOR

Dated: March 2, 2020

30