UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KAYVON HAGHIGHI, *et al.*,

        Plaintiffs,

v.

HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY,

        Defendant.

Civil Action No.: 19-20483 (FLW)

**OPINION**

**WOLFSON, Chief Judge**:

This matter comes before the Court on the Motion of Defendant Horizon Blue Cross Blue Shield of New Jersey ("Defendant" or "Horizon") to dismiss the Amended Complaint of Plaintiffs Kayvon Haghighi ("Dr. Haghighi") and the Maxillofacial Surgery Center for Excellence, LLC (together, "Plaintiffs"). Plaintiffs seek to recover the normal and reasonable charges for a surgical procedure that was rendered, pursuant to various state law contract, quasi contract, and tort claims. Defendant argues that the alleged claims are preempted under the Employee Retirement Income Security Act ("ERISA"), or, in the alternative, the Amended Complaint fails to assert a viable cause of action. For the reasons expressed herein, Defendant's Motion to dismiss is **GRANTED**. However, Plaintiffs are given leave to amend their breach of contract, negligent misrepresentation, and estoppel state law claims within 21 days from the date of this Opinion.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are taken from Plaintiffs' Amended Complaint and are presumed to be true for the purpose of this Motion. Dr. Haghighi is a New Jersey licensed physician who practices at the Maxillofacial Surgery Center for Excellence, LLC, located in Red Bank, New

1

Jersey. Am. Compl., ¶ 1. On December 17, 2015, Dr. Haghighi performed dental and medical surgical procedures on Madison Guido (the "Patient")[1] who is insured under the benefits plan (the "Plan") of Silvia Guido, his relative. *Id*. at 3. Horizon serves as the administrator of the Plan. *Id*.

Plaintiffs allege that Horizon "pre-approved" the Procedure "in writing" on two separate dates; first in May 2015, before the surgical medical services were administered, and again in July 2016. *Id*. at 4. According to Plaintiffs, however, Defendant only paid $2,544.43 of the $50,000 claim that was submitted to Horizon, purportedly representing the "reasonable and customary" costs of the Procedures. *Id*. at 6-7. As a result, Plaintiffs assert that the "members," Silvia and Madison Guido, are "left exposed" to cover the remaining balance, which totals more than $47,455.57. *Id*. at 7. Despite appealing the amount paid three times on March 28, 2016, December 27, 2017, and March 23, 2018, Plaintiffs allege that they had no success in resolving their dispute with Horizon. *Id*. at 7-9.

On October 3, 2019, after failing to resolve their dispute through the administrative appeals process, Plaintiffs filed the instant action against Defendant in the Superior Court of New Jersey, Law Division, Monmouth County. The original complaint included various references to ERISA and the Plan, and identified Plaintiffs as the "assignees and designated representatives of" Silvia and Madison Guido. Moreover, while Plaintiffs alleged that the Procedures were eligible for coverage under the Plan, and that Defendant failed to compensate them pursuant to its terms, the original pleadings also asserted various state law contract, quasi contract, and tort law claims, resulting from Defendant's failure to remunerate Plaintiffs. On

---

[1] In particular, the following medical surgical procedures were performed on the Patient: "segmental Le Fort 1 osteotomy with bone graft; bilateral sagittal osteotomies of the mandibular ramus; septoplasty; bone marrow aspiration from the left anterior ileum[.]" Am. Compl., ¶ 3.

November 19, 2019, Defendant removed the case to this Court, pursuant to 28 U.S.C. §§ 1441 and 1446, on the basis of preemption.

On December 24, 2019, Plaintiffs filed an Amended Complaint, this time in their own individual capacities, rather than as the "assignees and designated representatives of" Silvia and Madison Guido. Furthermore, no new factual allegations or causes of action are asserted in the Amended Complaint; instead, it omits the original pleading's citations to ERISA and most references to the Plan. The Amended Complaint asserts the following seven common law claims against Defendants: (Count I) breach of contract and violation of good faith and fair dealing; (Count II) quantum meruit; (Count III) unjust enrichment; (Count IV) tortious interference with economic advantage; (Count V) violations of NJ statutes, regulations, and other requirements;[2] (Count VI) negligent misrepresentation; and (Count VII) promissory legal and equitable estoppel.

In the instant matter, Defendant moves to dismiss the pleadings, and argues that Plaintiffs' state law claims are preempted under ERISA. In the alternative, Defendant contends that Plaintiffs fail to assert a viable claim in the Amended Complaint. Plaintiffs oppose the Motion.

**II.     DISCUSSION**

---

[2]     Because Plaintiffs do not discuss their claim for "violations of NJ statutes, regulations, and other requirements" in their opposition brief, the Court deems that claim abandoned. *See Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003), *aff'd*, 136 F. App'x 551 (3d Cir. 2005) ("Plaintiff makes no response to this argument, and thus has waived his opportunity to contest it."); *Powell v. Verizon*, No. 19-8418, 2019 U.S. Dist. LEXIS 161552, at *22 (D.N.J. Sept. 20, 2019) ("A plaintiff concedes a claim when she fails to oppose arguments in support of a motion to dismiss . . . ."); *Person v. Teamsters Local Union 863*, No. 12-2293, 2013 U.S. Dist. LEXIS 149252, at *2 (D.N.J. Oct. 17, 2013) ("Failure to raise legal arguments in opposition to a motion to dismiss results in waiver."). Therefore, in determining whether the Amended Complaint asserts a viable claim, the Court does not consider Plaintiffs' violation of NJ statutes claim.

3

A. **Legal Standard**

A court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]") (quotations omitted). Thus, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . ." *See Twombly*, 550 U.S. at 555 (citations omitted). When evaluating a motion to dismiss for failure to state a claim, district courts engage in a three-step progression.

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 662. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 664. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id*. This means that the inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of

the inquiry are sufficiently alleged. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir.2011). A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Fowler*, 578 F.3d at 211 (citations omitted).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) *cert. denied*, 565 U.S. 817 (2011). Generally, when determining a motion under Rule 12(b)(6), the court may only consider the complaint and its attached exhibits. However, while "a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) (citation omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

**B.     ERISA Preemption**

Defendant contends that ERISA operates to bar Plaintiffs' Amended Complaint, which asserts claims for breach of contract, quantum meruit, unjust enrichment, tortious interference, and negligent misrepresentation. According to Defendant, Plaintiffs cannot pursue these causes of action, because they relate to an ERISA Plan and are preempted under the statute. Defendant's Motion, at 9-11. Refuting these contentions, Plaintiffs argue that their state law claims are based

5

on Defendant's breach of an enforceable freestanding agreement, separate and apart from the Plan. Plaintiffs' Opposition, at 1-2.

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). To achieve this goal, ERISA contains expansive preemption provisions, *see* ERISA § 514, 29 U.S.C. § 1144, which operate to keep the regulation of benefit plans in the federal domain. *Id.* ("ERISA includes expansive pre-emption provisions, . . . which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'") (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)); *see also New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 303 (3d Cir. 2014) ("Congress enacted ERISA to ensure that benefit plan administration was subject to a single set of regulations and to avoid subjecting regulated entities to conflicting sources of substantive law."). Indeed, the ultimate objective of federal ERISA preemption is to "eliminate the threat of conflicting and inconsistent State and local regulation." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 657 (1995).

ERISA's express preemption provision is set forth in § 514(a), which preempts "any and all State laws insofar as they . . . relate to any employee benefit plan" covered under the statute. 29 U.S.C. § 1144(a) (emphasis added). State laws "relate to" an ERISA plan if the law either has a "reference to" or has a "connection with" the plan at issue. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990); *see also Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983); *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 293-94 (3d Cir. 2014). "The scope of '[s]tate laws' that may 'relate to' a plan is expansive, encompassing "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." *see also Plastic Surgery*

*Ctr., P.A. v. Aetna Life Ins. Co.*, 2020 U.S. App. LEXIS 22274, at *8 (3d Cir., 2020) (citing 29 U.S.C. § 1144(c)(1)). "This includes . . . state statutes, [and] common law causes of action." *Id*. (citing *Menkes*, 762 F.3d at 294); *see Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 83-84 (3d Cir. 2012) ("State common law claims fall within this definition and, therefore, are subject to ERISA preemption.").

As to the first definition, the Third Circuit has instructed that a state law claim will make an impermissible "reference to" an insurance plan when (1) "the existence of an ERISA plan [is] a critical factor in establishing liability," *Ingersoll-Rand*, 498 U.S. at 139-40; or (2) the court's examination will "require interpreting the plan's terms." *Menkes*, 762 F.3d at 294; *1975 Salaried Ret. Plan for Eligible Employees of Crucible, Inc. v. Nobers*, 968 F.2d 401, 406 (3d Cir. 1992) (citations omitted). As to the second definition, the Third Circuit has recently explained that a state law claim has a "connection with" an insurance benefits plan when (1) the claim "directly affect[s] the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries," *Plastic Surgery Ctr., P.A.*, 2020 U.S. App. LEXIS 22274, at *28 (citaitons omitted); (2) "interfere[s] with plan administration," *Menkes*, 762 F.3d at 295-96; or (3) "undercut[s] ERISA's stated purpose[,]" *Iola*, 700 F.3d at 84-85; *Kollman*, 487 F.3d at 149.

In *Plastic Surgery Ctr.*,[3] the Third Circuit addressed the breadth of preemption under ERISA. There, the plaintiff, a medical provider, asserted various state law claims against the defendant insurer, arising from an oral agreement that the parties executed over the phone.

---

[3] The Court notes that the Third Circuit's opinion in *Plastic Surgery Ctr*. was issued after the instant motion was briefed. While neither litigant has discussed the decision's impact on Plaintiffs' claims, for the reasons discussed *infra*, the Court is dismissing Plaintiffs' Amended Complaint without reaching the issue of preemption. Because Plaintiff is given leave to amend, if another dismissal motion is filed, the parties are advised to discuss *Plastic Surgery Ctr*. and its impact on Plaintiffs' amended state law claims.

7

*Plastic Surgery Ctr.*, 2020 U.S. App. LEXIS 22274, at *3-4. Pursuant to the verbal contract's terms, the plaintiff agreed to perform certain surgical procedures on two patients, for which the defendant would compensate the plaintiff in a "reasonable amount," according to the terms of their plans. *Id*. Despite this arrangement, the defendant allegedly refused to compensate the plaintiff in the amount to which the defendant agreed, after the medical services were provided. *Id*. at *4-5. In turn, the plaintiff alleged breach of contract, promissory estoppel, and unjust enrichment claims, which the defendant moved to dismiss as preempted under ERISA.

The Third Circuit found that the plaintiff's former two claims did not "relate to" an ERISA plan. In so holding, the Third Circuit explained that the parties executed a freestanding contract, defining the medical procedures that the plaintiff agreed to perform, and the amount that the defendant promised to provide in exchange for those services. *Id*. at *20-21. As such, because the defendant's "oral offers and promises" delineated the scope of its duties, the Third Circuit found that the plaintiffs' state law claims arose from "obligations independent of the plans." *Id*. at *18-22. However, the Third Circuit reached a different conclusion with respect to the claim for unjust enrichment, which requires a litigant to plead that a defendant received a benefit for which it never paid. According to the Third Circuit, in an ERISA action, the "benefit conferred" is the discharge of an insurer's obligation to an insured. *Id*. at *37-38. Thus, the Third Circuit concluded that the plaintiffs' unjust enrichment claim was "premised on the existence of" a plan, and dismissed it as preempted under ERISA. *Id*.

### i. Breach of Contract

In Count I of the Amended Complaint, Plaintiffs assert a breach of contract claim against Defendant. At the outset, I note that while Plaintiffs contend that this action arises from an "independent relationship" with Defendant, the pleadings are unclear as to whether Plaintiffs

bring this action under the Plan, in which case ERISA preemption might be applicable, or an unrelated standalone agreement. For example, Plaintiffs' contract claims, as specifically pled in the Amended Complaint, are not based on a freestanding agreement that the parties executed before the rendered medical services, but rather on their alleged status as "beneficiaries" of the Plan. Am. Compl., ¶ 15, ("Defendant failed to pay Plaintiffs as third party beneficiaries . . . ."). As a result of the ambiguities in the pleadings, the Court cannot, at this time, engage in a preemption examination under ERISA.[4] Nevertheless, even if, for the purpose of this Motion, the Court presumes that Plaintiffs intend to allege claims based on a standalone agreement, the Amended Complaint fails to assert a viable cause of action. I first turn to Plaintiffs' breach of contract claim.

To succeed on a breach of contract claim, a litigant must allege: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). Here, to establish the first element, *i.e.*, that the parties executed an independent contract from the Plan, the pleadings allege that Defendant preauthorized the Procedure in writing, prior to the date on which the medical services were administered. Am. Compl., ¶ 4. However, no substantive allegations pertaining to the "written preauthorization" are included in the Amended Complaint. Indeed, the Amended Complaint does not describe the preauthorization's contents whatsoever, including, for example, the extent and scope of covered treatment. While these matters need not be alleged in elaborate detail, Plaintiffs cannot depend

---

[4] Because the pleadings are unclear as to whether Plaintiffs seek to enforce the provisions of a private agreement, and the extent to which their causes of action relate to an ERISA plan, the Court is retaining jurisdiction at this juncture. However, if Plaintiffs file a second amended complaint that asserts independent state law causes of action, such that the statute's preemption provision is inapplicable, this action would be remanded to state court for lack of subject matter jurisdiction.

9

on a simple preauthorization, in and of itself, to establish that the parties executed a standalone contract, intended to cover all rendered services. Importantly, courts within this district have found some preauthorizations, akin to the one alleged here, to bear a connection with, or have a relationship to, an ERISA plan. *See Atl. Shore Surgical Assocs. v. Horizon Blue Cross Blue Shield*, No. 17-07534, 2018 U.S. Dist. LEXIS 90734, at *15 (D.N.J. May 31, 2018) (holding that a preauthorization did not constitute a freestanding contract, because the preauthorization was dependent on "the member's benefit plan."); *Advanced Orthopedics & Sports Med. Inst. v. Empire Blue Cross Blue Shield*, No. 17-08697, 2018 U.S. Dist. LEXIS 96814, at *15 (D.N.J. June 7, 2018); *Glastein v. Horizon Blue Cross Blue Shield of Am.*, No. 17-7983, 2018 U.S. Dist. LEXIS 135911, at *7 (D.N.J. Aug. 13, 2018). Therefore, because Plaintiffs have not alleged the existence of an independent agreement from the Plan, their breach of contract claim is dismissed without prejudice.[5]

### ii. Unjust Enrichment and Quantum Meruit

In Counts II and III, Plaintiffs assert unjust enrichment[6] and quantum meruit claims. An unjust enrichment claim requires a litigant to allege: "(1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit

---

[5] Indeed, rather than contest Defendant's arguments as to the alleged contract claims, Plaintiffs concede that "their might be some ambiguit[ies]" in the Amended Complaint, "that was not previously addressed when revising the Original Complaint," and request permission to amend their contractual claims in order to "articulate the factual basis for the claimed rights[.]" Pl.'s Opposition, at 19.

[6] The Court recognizes that the Third Circuit's opinion in *Plastic Surgery Ctr.* held that the plaintiff's unjust enrichment claim, there, was preempted because it related to an ERISA Plan. Because of the Amended Complaint's ambiguities, *i.e.*, whether Plaintiffs bring this action as beneficiaries of the Plan, or instead to enforce the provisions of an independent agreement, the Court does not determine if Plaintiffs' unjust enrichment claim is precluded under ERISA. Nevertheless, for the reasons set forth *infra*, Plaintiffs do not state a viable claim for unjust enrichment.

without paying for it." *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 723-24 (D.N.J. 2011). To succeed on a claim for quantum meruit, a litigant must plead "(1) the performance of services in good faith; (2) the acceptance of the services by the person to whom they are rendered; (3) an expectation of compensation therefore; and (4) the reasonable value of the services." *Starkey v. Estate of Nicolaysen*, 172 N.J. 60, 68 (2002) (citing *Longo v. Shore & Reich, Ltd.*, 25 F.3d 94, 98 (2d Cir.1994)). Moreover, to state unjust enrichment and quantum meruit claims, "the benefit at issue must have been conferred on . . . the [d]efendant." *Broad St. Surgical Ctr., LLC v. UnitedHealth Group, Inc.*, No. 11-2775, 2012 U.S. Dist. LEXIS 30466, at *22-23 (D.N.J. Mar. 6, 2012).

Here, Plaintiffs fail to allege a cognizable claim for unjust enrichment and quantum meruit. In the Amended Complaint, Plaintiffs base both claims on the same set of factual circumstances, and allege that "Defendant has received the benefit of, but not paid reasonable compensation for" the medical services that Plaintiffs performed. Am. Compl., ¶¶ 21, 25-26. However, as numerous courts within this district have found, the insured individual, rather than the insurer, derives the benefit from a healthcare providers' provision of medical services. Thus, Plaintiffs' unjust enrichment and quantum meruit claims are dismissed on these grounds. *See Small v. Oxford Health Ins., Inc.*, No. 18-13120, 2019 U.S. Dist. LEXIS 27878, at *17 (D.N.J. Feb. 21, 2019) ("[A]n insurance company does not derive a benefit from services provided for an insured for purposes of a quantum meruit claim."); *Advanced Orthopedics & Sports Med. Inst. v. Int'l Union of Operating Eng'rs Local 14-14B*, No. 19-5076, 2019 U.S. Dist. LEXIS 223586, at *25-26 (D.N.J. Nov. 26, 2019) ("It is well-established that an insurer does not derive a benefit from services provided for an insured."); *Comprehensive Spine Care P.A. v. Oxford Health Ins., Inc.*, No. 18-10036, 2018 U.S. Dist. LEXIS 207782, at *18 (D.N.J. Dec. 10, 2018) ("[A]ny

benefit conferred by [the plaintiff's] performance of the surgical procedure benefited [the patient], not [the defendant insurer.]").

### iii. Tortious Interference

In Count IV, Plaintiffs raise a tortious interference claim. To allege such a claim, Plaintiffs must plead: (1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference. *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 751-52 (1989). "It is 'fundamental' to a cause of action for tortious interference with a prospective economic relationship that the claim be directed against defendants who are not parties to the relationship." *DeJoy v. Comcast Cable Communs.*, 941 F. Supp. 468, 477 (D.N.J. 1996) (quoting *Printing Mart-Morristown* 116 N.J. at 752); *Cappiello v. Ragen Precision Indus., Inc.*, 192 N.J. Super. 523, 529 (App. Div. 1984) (holding that a tortious interference claim "requires the meddling into the affairs of another"); *Columbus LTACH Mgmt., LLC v. Quantum LTACH Holdings, LLC*, No. 16-6510, 2018 U.S. Dist. LEXIS 92735, at *11 (D.N.J. May 31, 2018) ("[A] party to a contract cannot be liable for tortiously interfering with its own contract.") (citations omitted).

Here, Plaintiffs' tortious interference claim fails, irrespective of whether it arises from an "independent agreement" or an ERISA plan, because Defendant is a contracting party to each. For this reason, Defendant's alleged misconduct must be redressed under traditional principles of contract law, and Plaintiffs' tortious interference claim is dismissed on these grounds. *See DeJoy*, 941 F. Supp. at 477 ("The rule of tortious interference was not meant to upset the rules governing the contractual relationship itself. Where a person interferes with the performance of his or her own contract, the liability is governed by principles of contract law.") (quoting

*Printing Mart-Morristown*, 116 N.J. at 753); *see Center for Concept Dev., Ltd. v. Godfrey*, 97-7910, No. 97-7910, 1999 U.S. Dist. LEXIS 3337, at *6 (E.D. Pa. Mar. 23, 1999) ("It is hornbook law that a party or successor party to a contract cannot tortiously interfere with its own contracts.") (citations omitted).

### iv. Negligent Misrepresentation and Estoppel

In Counts VI and VII, Plaintiffs allege negligent misrepresentation and estoppel claims. To assert a claim for negligent misrepresentation, a litigant must allege: "1) the defendant negligently provided false information; 2) the plaintiff was a reasonably foreseeable recipient of that information; 3) the plaintiff justifiably relied on the information; and 4) the false statements were a proximate cause of the plaintiff's damages." *McCall v. Metropolitan Life Ins. Co.*, 956 F. Supp. 1172, 1186 (D.N.J. 1996) (citation omitted). The elements of a promissory estoppel claim include: "(1) a clear and definite promise by the promisor; (2) the promise must be made with the expectation that it will induce reliance by the promisee; (3) the promisee must reasonably rely upon the promise; and (4) the promisee must experience detriment of a definite and substantial nature by relying on the promise." *Pitak v. Bell Atl. Network Servs.*, 928 F. Supp. 1354, 1367 (D.N.J. 1996) (citation omitted).

Here, Plaintiffs do not assert a viable estoppel claim. The Amended Complaint alleges that Defendant "provid[ed] written authorization" and "pre-approv[ed] the procedures at issue," and, as a result, Plaintiffs are entitled to recoup the reasonable charges for the rendered medical services, totaling $50,000. Am. Compl., ¶ 40. But, because Plaintiffs received a mere $2,544.43 from Defendant, Plaintiffs allege that Defendant "is estopped from refusing to provide reasonable reimbursement" for the rendered medical services. *Id*. However, Plaintiffs do not assert, for example, that the preauthorization agreement includes a specific billing rate, or that it

13

contains an explicit provision entitling them to be paid in excess of $2,544.43; indeed, the pleadings are entirely devoid of factual allegations that relate to a fixed or agreed-upon rate of compensation. In that connection, Plaintiffs have not alleged that Defendant made a "clear and definite" promise to remunerate them in the "reasonable" amount of $50,000, and their estoppel claim is dismissed on this basis.[7] Moreover, Plaintiffs' negligent misrepresentation claim also fails for these reasons, as the Amended Complaint does not allege that Defendant "provided false information" as to the compensation that Plaintiffs would receive, for the rendered medical services.

In sum, the Amended Complaint does not allege a standalone agreement, separate and apart from the Plan, and therefore, Plaintiffs' breach of contract claim cannot stand. Plaintiffs' negligent misrepresentation and estoppel claims also fail, because the pleadings do not allege that Defendant discussed or promised to provide a certain amount of compensation for the rendered medical services. Moreover, because the insured individual, rather than the insurer, derives a benefit from the medical services of a health care provider, Plaintiffs' unjust enrichment and quantum meruit claims are dismissed. Plaintiffs also fail to allege a viable tortious interference claim, as an individual cannot interfere with his or her own contract. With the exception of their unjust enrichment, quantum meruit, and tortious interference causes of action, Plaintiffs are given leave to amend their state law claims. At that time, if appropriate, Defendant can move again to dismiss Plaintiffs' amended state law claims on the basis of

---

[7] I note that Plaintiffs also allege an equitable estoppel claim in the Amended Complaint, which is based on the same set of factual allegations that support their cause of action for promissory estoppel. The pleadings lump these two theories together, and thus, Plaintiffs' equitable estoppel claim fails for the same reasons that it has not alleged a claim for promissory estoppel. *See Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 162 (3d Cir. 2018) (dismissing the plaintiff's claim for promissory estoppel, and holding that the "absence of any clear promise" on the part of the [defendant corporation] also doom[ed] the [plaintiff's] equitable estoppel claim.").

preemption under ERISA. However, if there is no ERISA claim, leaving only state law claims, remand would be appropriate. *See* FN 4, *supra*.

### III.   CONCLUSION

For the foregoing reasons, Defendant's Motion to dismiss Plaintiffs' Amended Complaint is **GRANTED**. Nonetheless, Plaintiffs are given leave to amend their breach of contract, negligent misrepresentation, and estoppel state law claims within 21 days from the date of this Opinion and accompanying Order.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge